SHEPPARD MULLIN RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
NEIL A. SMITH, Cal. Bar No. 63777
NATHANIEL BRUNO, Cal. Bar No. 228118
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone: 415-434-9100
Facsimile: 415-434-3947
Electronic mail: nsmith@sheppardmullin.com
nbruno@sheppardmullin.com

Of Counsel (Pro Hac Vice Applications Filed):
HOWARD, PHILLIPS & ANDERSEN
GREGORY D. PHILLIPS, Utah Bar No. 4645
THOMAS R. LEE, Utah Bar No. 5991
SCOTT R. RYTHER, Utah Bar No. 5540
560 East 200 South, Suite 300
Salt Lake City, UT 84102
Telephone: 801-366-7471
Facsimile: 801-366-7706
Electronic mail: gdp@hpalaw.com
leet@law.byu.edu
sryther@hpalaw.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **VOLKSWAGEN AG,** a German corporation, and **VOLKSWAGEN GROUP OF AMERICA, INC.**, a New Jersey corporation,<br><br>Plaintiff,<br>v.<br>**VERDIER MICROBUS & CAMPER, INC.,** an entity of unknown origin, and **ALEXANDRE VERDIER**, an Individual,<br>Defendants. | Civil Action No. C-09-0231-JSW<br><br>**VW'S SUPPLEMENTAL BRIEF RE MOTION FOR PRELIMINARY INJUNCTION IN RESPONSE TO ORDER OF COURT DATED MARCH 2, 2009 [DOCKET NO. 42]**<br><br>Motion Heard On: February 27, 2009<br>Courtroom: 2, 17th Floor<br>Honorable Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

I. THERE IS NO BASIS FOR A LACHES DEFENSE. ........................................................... 1

II. VOLKSWAGEN HAS PROTECTABLE TRADEMARK RIGHTS IN THE "MICROBUS" WORD MARK AND IN THE TRADE DRESS OF THE MICROBUS ............. 4

    A. Volkswagen Has Registered Two Trademark Registrations Incorporating the Term "Microbus." ........................................................................... 5

    B. Volkswagen Has Trade Dress Rights in the Volkswagen Microbus®. ........................................................................................ 6

        1. The "Design Elements" of the Volkswagen Microbus®. ............................................................................................ 6

        2. The Trade Dress is "Non-Functional." ...................................................... 7

        3. The Trade Dress Has Acquired Secondary Meaning. ............................ 8

III. THE COURT MAY SET THE BOND REQUIREMENT AT ZERO IN THE ABSENCE OF ANY PROOF OF HARM TO DEFENDANTS. .................................................. 9

# TABLE OF AUTHORITIES

**Federal Cases**

Adray v. Adray Mart,
76 F.3d 984 (9th Cir. 1995)........................................................................................... 2

Brooks Brothers v. Brooks Clothing of California,
60 F. Supp. 442 (C.D. Cal. 1945).................................................................................. 5

Click Billiards v. Sixshooters,
252 F.3d 1252 (9th Cir. 2001)................................................................................... 1, 6

Cullman Ventures v. Columbian Art Works,
717 F. Supp. 96 (S.D.N.Y. 1989).................................................................................. 5

Danjac LLC v. Sony Corp.,
265 F.3d 942 (9th Cir. 2001)......................................................................................... 1

Dial-A-Mattress Operating v. Mattress Madness,
841 F. Supp. 1339 (E.D.N.Y. 1994).............................................................................. 4

eBay, Inc. v. Bidder's Edge, Inc.,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ........................................................................ 4

Ferrari S.P.A. Esercizio v. Roberts,
944 F.2d 1235 (6th Cir. 1991)....................................................................................... 6

Ferrari S.P.A. Esercizio v. McBurnie,
11 U.S.P.Q. 2d 1843, 1989 WL. 298658 (S.D. Cal. 1989) ........................................... 6

First Brands Corp.,
809 F.2d at 1381-1382 .................................................................................................. 1

Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,
826 F.2d 837 (9th Cir. 1987)......................................................................................... 2

General Motors v. Let's Make A Deal,
223 F. Supp. 2d 1183 (D. Nev. 2002) ................................................................... 1, 2, 6

Gorbach v. Reno,
219 F.3d 1087 (9th Cir. 2000)....................................................................................... 3

Guess?, Inc. v. Tress Hermanos,
993 F. Supp. 1277 (C.D. Cal. 1997)........................................................................... 2, 3

Halo Management, LLC v. Interland, Inc.,
308 F. Supp. 2d 1019 (N.D. Cal. 2003) ........................................................................ 3

Independent Nail & Packing v. Stronghold Screw Products,
205 F.2d 921 (7th Cir. 1953)......................................................................................... 5

| | |
|---|---|
| Jarrow Formulas, Inc. v. Nutrition Now, Inc.,<br>304 F.3d 829 (9th Cir. 2002) | 1, 2 |
| Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,<br>WL 4614660 (N.D. Cal. 2008) | 1, 2, 4 |
| Miller v. Glenn Miller Productions, Inc.,<br>454 F.3d 975 (9th Cir. 2006) | 1, 4 |
| National Customer Engineering v. Lockheed Martin Corp.,<br>43 U.S.P.Q. 2d 1036 (C.D. Cal. 1997) | 6 |
| Porsche Cars N.A. v. Manny's Porshop, Inc.,<br>972 F. Supp. 1128 (N.D. Ill. 1997) | 2, 5 |
| Pro-Fitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy,<br>314 F.3d 62 (2d Cir. 2002) | 2 |
| Rolls Royce Motors v. Custom Cloud Motors,<br>190 U.S.P.Q. 80 (S.D. N.Y. 1976) | 6 |
| Save Our Sonoran, Inc. v. Flowers,<br>408 F.3d 1113 (9th Cir. 2005) | 2 |
| Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n,<br>465 F.3d 1102 (9th Cir. 2006) | 1, 3 |
| Ty, Inc. v. Jones Group,<br>237 F.3d 891 (7th Cir. 2001) | 6 |
| University of Pittsburgh v. Champion Products, Inc.,<br>686 F.2d 1040 (3rd Cir. 1982) | 4 |
| Vision Sports, Inc. v. Melville Corp.,<br>888 F.2d 609 (9th Cir. 1989) | 1 |
| Volkswagen v. Volks City, Inc.,<br>348 F.2d 659 (3rd Cir. 1965) | 5 |

**Statutes**

| | |
|---|---|
| Fed. R. Civ. P. 65(c) | 2 |

**Miscellaneous**

| | |
|---|---|
| McCarthy on Trademarks and Unfair Competition, § 9:3 | 5 |
| McCarthy on Trademarks and Unfair Competition, § 23:76 | 5 |

In response to the Court's Order dated March 2, 2009 [Docket No. 42], Plaintiffs Volkswagen AG, et al. submit this Supplemental Brief on (1) the laches defense, (2) Volkswagen's trademark rights in the MICROBUS word mark and in the trade dress of the Microbus vehicle, and (3) an appropriate bond.

## I. THERE IS NO BASIS FOR A LACHES DEFENSE.

The first issue raised by the Court concerns "the possibility of a laches defense" that might be raised by Defendants. Specifically, the Court notes that "at least some of the Internet articles and blog postings, which Plaintiffs submit to show actual confusion, are dated 2006 and 2007," and requests "further briefing on the issue of when Plaintiffs 'knew or should have known' they had a claim against Defendants." (Court's Order [Docket No. 42] at 1 (quoting *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).)

Under Ninth Circuit authority, the affirmative defense of laches requires proof by Defendants that Volkswagen "'unreasonably delayed in filing suit and that it suffered prejudice as a result of [Defendants'] unreasonable delay.'" *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, WL 4614660, *11 (N.D. Cal. 2008) (quoting *Danjac LLC v. Sony Corp.*, 265 F.3d 942, 955 (9th Cir. 2001)). "'Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense.'" *Id*. "[I]f a claim is filed within the limitations period, there is a strong presumption that laches does not apply." *Id*. at *11, n. 18 (citing *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 (9th Cir. 2006)).

Under *Tillamook Country Smoker*, the laches clock "starts from the time the plaintiff knew or should have known about its potential cause of action.'" 465 F.3d at 1108 (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)). "'[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known … that [it] had a ***provable infringement claim*** against defendant.'" *Id*.

(quoting *Pro-Fitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy*, 314 F.3d 62, 70 (2d Cir. 2002) (emphasis added)). Thus, the laches clock does not start "'until the likelihood of confusion looms large.'" *Id*. (quoting *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996)).

In this case, any supposed laches defense fails for at least four separate reasons. First, the evidence in the record establishes that Volkswagen did not know about Verdier until very recently, and there is no reason to charge Volkswagen with unreasonable delay before then. Volkswagen has filed herewith a Declaration of Dana Cizmadia ("Cizmadia Decl.") and a Declaration of Jason Eves in Support of VW's Supplemental Brief Re Motion for Preliminary Injunction ("Further Suppl. Eves. Decl."), which indicates that (a) Volkswagen first learned of Verdier on or about November 21, 2008 and immediately referred the matter to outside counsel; (b) after preliminary investigation, Volkswagen's counsel sent a cease-and-desist letter to Defendants on December 1, 2008; and (c) after several exchanges of correspondence with Volkswagen's counsel, Defendants refused to comply with Volkswagen's demands and Volkswagen filed this action on January 16, 2009. (Cizmadia Decl., ¶¶ 1-9; Further Suppl. Eves Decl., ¶¶ 1-13.) Volkswagen cannot be charged with unreasonable delay where it filed suit within a couple of months of first learning of Verdier and attempting to resolve the matter through non-litigation means. *See Porsche Cars N.A. v. Manny's Porshop, Inc.*, 972 F. Supp. 1128, 1132-33 (N.D. Ill. 1997) (rejecting argument that ten-year delay in bringing suit undermines showing of irreparable harm where "the delay … is the result of plaintiffs' attempt to settle th[e] case," and explaining that plaintiff "should not be punished for pursuing a non-litigious course of action"); *Guess?, Inc. v. Tress Hermanos*, 993 F. Supp. 1277 (C.D. Cal. 1997) (nine-month delay excused by settlement negotiations; preliminary injunction entered).

As this Court recognized in the *Levi Strauss* case, there is no reason to charge a trademark plaintiff with constructive knowledge where the defendant's "brand is not advertised or promoted through traditional media and is offered for sale only" in limited "retail stores" and "the internet." WL 4614660, *11 (N.D. Cal. 2008). Defendants' promotion and advertising of

its products were similarly limited (at least until recently). Verdier's infringing products were "not advertised or promoted through traditional media," but only on the "internet." *Id*. There is no basis for concluding that Volkswagen "should have known" about Verdier any sooner. Defendants bear the burden of proving otherwise, since laches is an affirmative defense, and Defendants have failed to carry that burden (despite actual notice of Volkswagen's suit and motions).

Second, even assuming *arguendo* that Volkswagen "should have known" about Verdier's existence at earlier stages, that would not be enough to sustain a laches defense. Under *Tillamook*, Defendants would have to show that Volkswagen "knew or should have known" that the "'likelihood of confusion loom[ed] large.'" *Tillamook*, 465 F.3d at 1108. There is no basis in the record for such a conclusion. In fact, the evidence in the record shows that Verdier only recently began to sell its products, and to take deposits on them, and is still at the early stages of marketing them. The deposits taken on the VERDIER.CA website are for 2009 and 2010 models. (*See* Declaration of Jason Eves in Support of Motion for Preliminary Injunction [Docket No. 10], Exhibit 1.) Thus, until very recently—before the 2009 model was promoted and offered for sale—any likelihood of confusion was relatively small and Volkswagen had no obligation to file suit. Furthermore, it was only last month, February 2009, that Volkswagen learned of the new and compounding threat of confusion related to Verdier's nomination for an Edison Award. (Supplemental Declaration of Jason Eves of New Evidence In Support of VW's Motion for Preliminary Injunction [Docket No. 35], ¶¶ 3-5 and Exhibits 1-3 thereto.) Volkswagen cannot be faulted for purportedly unreasonably delaying during the period before Defendants solicited deposits on their infringing models, because it was not until that point that the likelihood of confusion "loom[ed] large," and that threat has recently been discovered to be even more acute with respect to the Edison Award nomination.

Third, Volkswagen could not be deemed to have unreasonably delayed *even assuming* for the sake of argument that it "should have known" of a provable claim against Verdier since the earliest dates identified in the record, which are in 2006. (*See* Declaration of Jason Eves in

Support of Motion for Preliminary Injunction [Docket No. 10], Exhibit 3.) "In trademark cases, the Ninth Circuit applies a four year statute of limitations." *Levi Strauss*, WL 4614660, *11 (citing *Miller*, 454 F.3d at 997). Thus, even if Volkswagen "should have known" of its claim against Verdier since 2006 (and there is no reason to reach that conclusion), Volkswagen still could not be deemed to have "unreasonably delayed" since it filed this suit well within the four-year statute of limitations period. Because Volkswagen filed before the four-year limitations period expired, "there is a strong presumption that laches does not apply," *id.* (citing *Miller*, 454 F.3d at 997)—regardless of whether Volkswagen "should have known" of its claim on the earliest dates identified in the record.

Finally, Defendants have the burden to establish prejudice, and they have not carried and cannot carry that burden. As courts have made clear, building a business based on infringement does not constitute prejudice. *E.g., Dial-A-Mattress Operating v. Mattress Madness*, 841 F. Supp. 1339, 1357 (E.D.N.Y. 1994). "[A]n infringing user who expands his or her business by exploiting the good will of another's service mark and by riding the coattails of the senior user's advertising and reputation does so at his or her peril." *Id.*; *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 168-1069 (N.D. Cal. 2000); *see also University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1049 (3rd Cir. 1982) (explaining that where goodwill in defendant's business is "a result of the efforts of [plaintiff]" and defendant "merely packages and exploits" the "success or notoriety" developed by the plaintiff, there is insufficient evidence of prejudice to support the defense of laches).

## II. VOLKSWAGEN HAS PROTECTABLE TRADEMARK RIGHTS IN THE "MICROBUS" WORD MARK AND IN THE TRADE DRESS OF THE MICROBUS.

Volkswagen has protectable trademark rights in (a) the term "Microbus," and (b) the Microbus trade dress. The Court has requested further briefing on the question of whether Defendants' use of the "Microbus" term infringes Volkswagen's individual marks and trade dress. (Docket No. 42.)

## A. Volkswagen Has Registered Two Trademark Registrations Incorporating the Term "Microbus."

Volkswagen has registered the trademarks VOLKSWAGEN MICROBUS® and a MICROBUS® design mark. These registrations establish Volkswagen's rights in "MICROBUS" that are infringed by Defendants' misappropriation of that term in their business name.

As Professor McCarthy has explained: "It is not necessary that the alleged infringer use all aspects of the registered mark for likely confusion to result. For example, under the likelihood of confusion test, defendant is an infringer where it reproduces the words, but not the background design logo, of plaintiff's registered composite mark." *McCarthy* § 23:76 (citing *Cullman Ventures v. Columbian Art Works*, 717 F. Supp. 96, 128 (S.D.N.Y. 1989) (rejecting defendant's argument of non-infringement because it "did not reproduce the background designs that appear on the registrations of some of the [] trademarks" and holding "[a]n infringer is not absolved from liability merely because it has not replicated every single aspect of a trademark--including a simple geometric background design.")) As another court ruled in a situation where it enjoined the business name "Stronghold" where the defendant copied the trademark "Stronghold" but not the threaded bold design of the composite mark, "[a]n unfair competitor need not copy the entire mark to accomplish his fraudulent purpose." *Independent Nail & Packing v. Stronghold Screw Products,* 205 F.2d 921,924 (7th Cir. 1953).

In *Volkswagen v. Volks City, Inc.*, 348 F.2d 659, 660 (3rd Cir. 1965), the Third Circuit enjoined the business names "Volks City" and "Wagen City" based on the trademark VOLKSWAGEN®. *See also Porsche Cars N.A. v. Manny's Porshop, Inc.*, 972 F. Supp. 1128, 1132-33 (N.D. Ill. 1997) (enjoining business name "Manny's Porshop" based upon trademark PORSCHE®); *Brooks Brothers v. Brooks Clothing of California*, 60 F. Supp. 442, 453 (C.D. Cal. 1945), *aff'd,* 158 F.2d 798 (9th Cir. 1945) (enjoining business name "Brooks Clothing" even though business name does not incorporate entire trademark BROOKS BROTHERS®); *Ty, Inc. v. Jones Group*, 237 F.3d 891, 898-99 (7th Cir. 2001) (enjoining "Beanie Racers" based on trademark "Beanie Babies"); *see also* McCarthy on Trademarks and Unfair Competition,

Third Edition 2008, § 9.3 at n.4 (further making clear that Defendants' use of Volkswagen's trademark as part of Defendants' alleged corporate title ("Verdier *Microbus* & Camper") qualifies as trademark infringement) (citing, among numerous cases, *National Customer Engineering v. Lockheed Martin Corp.*, 43 U.S.P.Q.2d 1036 (C.D. Cal. 1997) ("Mountain Gate" corporate name infringes trademark MOUNTAIN for similar goods).)

The same conclusion is appropriate here. In context, there can be no doubt that the business name "Verdier Microbus & Camper, Inc." refers to the Volkswagen Microbus and not any other sort of "microbus." After all, Defendants have used the name "Microbus" in connection with the trade dress of the world-famous and iconic Volkswagen vehicle and the bastardized VW Emblem®. Thus, Volkswagen has presumptive rights in the MICROBUS® design mark and the VOLKSWAGEN MICROBUS® word mark and Defendants have infringed those marks by using MICROBUS in their business name.

### B. Volkswagen Has Trade Dress Rights in the Volkswagen Microbus®.

Courts consistently have held that knockoff vehicles constitute trade dress infringement. *E.g., Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1240 (6th Cir. 1991); *Ferrari S.P.A. Esercizio v. McBurnie*, 11 U.S.P.Q.2d 1843, 1989 WL 298658 (S.D. Cal. 1989); *Rolls Royce Motors v. Custom Cloud Motors*, 190 U.S.P.Q. 80 (BNA), 2-4 (S.D. N.Y. 1976); *General Motors v. Let's Make A Deal*, 223 F. Supp. 2d 1183 (D. Nev. 2002). Volkswagen has established trade dress rights that are infringed by Defendants' vehicles.

#### 1. The "Design Elements" of the Volkswagen Microbus®.

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Click Billiards v. Sixshooters,* 252 F.3d 1252, 1257 (9th Cir. 2001).

As the Court can see from the following side-by-side comparison from paragraph 33 of the Verified Complaint, Defendants have attempted to replicate the "total image, design, and appearance of the [Volkswagen Microbus]."


*Defendants' "Microbus" design and copycat Verdier Logo*


Compare to U.S. Serial No. 79037996


Compare to the overall appearance of the 1867 Volkswagen Microbus

While the law treats the overall appearance as trade dress, the Court has requested more specificity. The specific design elements or design cues that Defendants have attempted to misappropriate include, but are not limited to the "bread loaf" shape of the Microbus, the "V design" on the nose, the placement of the VW Logo® in the "V design," the high "belt-line" of the windshield and the passenger windows, the shallow and flat roof line and profile, the forward placement of the front wheels under the front passengers, the rear placement of the rear wheels towards the rear of the vehicle, the distinctive shape of the front-passenger doors, the distinctive shape of the "outwardly hinged barn" passenger doors, the placement and style of the door handles, the distinctive round headlights, the domed and chromed hubcaps or wheel covers, etc.

2. **The Trade Dress is "Non-Functional."**

As the court noted in the *General Motors v. Let's Make a Deal Case*, which involved knockoff HUMMER® kits:

"[N]on-functional features are those that are arbitrarily affixed or included for aesthetic purposes. In addition, the existence of alternative designs supports a finding of non-functionality. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1260 (9th Cir. 2001). A trade dress is examined as a whole when determining functionality. Thus, features, when considered separately as functional, may still create a non-functional trade dress when considered together. *First Brands Corp.*, 809 F.2d at 1381-1382. *See also Clicks Billiards, Inc.*, 251 F.3d at 1259 (explaining that a product should be evaluated as a whole on it functionality because "[t]rade dress is the composite tapestry of visual effects.")."

223 F. Supp. 2d 1183, 1196 (D. Nev. 2002).

In rejecting Defendants' functionality argument, the court applied these standards and held:

"It appears that the sum of the elements of the Hummer trade dress are non-functional. While defendants are correct that plaintiff incorporated design features that do serve some functional purposes, the overall finished product has attained non-functional status. Plaintiff in selecting and incorporating various components into its vehicle has created a sports utility vehicle that is aesthetically different from all vehicles on the market. The sum of its components, while they serve functional purposes, nevertheless create a unique looking vehicle. The overall appearance of plaintiff's vehicle distinguishes it from competitor's sports utility vehicles. Moreover, there are ample alternative designs available to defendants as evidenced by the current size of the sports utility market."

*Id.* The same conclusions are appropriate here.

### 3. **The Trade Dress Has Acquired Secondary Meaning.**

The Court has inquired about secondary meaning, which, as shown earlier, is either inherently distinctive as to certain elements, or acquired through use and recognition. In addition, as the court held in *Let's Make a Deal*, "[p]roof that a party has copied another's trade dress 'strongly supports an inference of secondary meaning.'" 223 F. Supp. 2d at 1195 (citing *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989)). The Ninth Circuit has made clear that "[o]ur cases recognize that evidence of deliberate copying is relevant to a determination of secondary meaning," and that a "jury [may] infer the existence of secondary meaning from a finding of intentional copying." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987). Moreover, where (as here) Volkswagen has presented

evidence of actual confusion, the Ninth Circuit has held that such evidence of "actual confusion is an indicium of secondary meaning." *Adray v. Adray Mart*, 76 F.3d 984, 987 (9th Cir. 1995).

In addition, Volkswagen is currently prosecuting a federal registration application for the Microbus trade dress, which includes abundant evidence of secondary meaning. Volkswagen's "evidence of acquired distinctiveness … consist[s] of promotional and advertising materials and unsolicited articles" depicting the Microbus trade dress. (Further Suppl. Eves Decl., ¶ 10, Exhibit 1.) Those materials include numerous advertisements and promotional materials highlighting and focusing on the distinctive design of the Volkswagen Microbus. (*Id*., Exhibit 1.) This is persuasive evidence of the protectability of the Microbus trade dress. *Let's Make A Deal*, 223 F. Supp. 2d at 1195 (advertising and promotional materials for Hummer vehicles establish secondary meaning).

Indeed, the U.S. Patent and Trademark Office entered an Official Action on December 16, 2009 finding that Volkswagen had "successfully claimed" that the Microbus trade dress has "acquired distinctiveness." (Further Suppl. Eves Decl., ¶ 11, Exhibit 2.)

### III. THE COURT MAY SET THE BOND REQUIREMENT AT ZERO IN THE ABSENCE OF ANY PROOF OF HARM TO DEFENDANTS.

The last issue identified by the Court concerns "the issue of an appropriate bond in the event the Court grants the motion." (Docket No. 42.) Under Fed. R. Civ. P. 65(c), the purpose of a bond is to provide security "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The Court has discretion to require a nominal bond or to waive the bond entirely. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). Waiver of the bond is appropriate where the non-moving party fails to present any "evidence the party will suffer damages from the injunction." *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (explaining that "the purpose of … a bond is to cover any costs or damages suffered by [the non-moving party] arising from a wrongful injunction" and affirming the waiver of the bond requirement where the non-moving party "did not show that there would be any"); *see also*

*Halo Management, LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1027 (N.D. Cal. 2003) (holding, in Lanham Act case, that "the bond amount may be zero where there is no evidence that a party will suffer damages from the issuance of an injunction").

Defendants have failed to present any evidence that a preliminary injunction will cause them harm, and a zero or nominal bond amount is accordingly appropriate. Despite actual notice of these proceedings and every opportunity to oppose Volkswagen's motion or request a bond, Defendants have failed to do so. Indeed, in the course of exploring the possibility of settlement of this matter,[1] Volkswagen invited Defendants to provide written documentation of the sales deposits they had received on the vehicles promoted on the Internet. (Further Suppl. Eves Decl., ¶ 12.) In response to these requests, Defendants claimed that they received only one such deposit and that they had refunded the entire amount of that deposit (which is shown as $1,000) to a third party. (Further Suppl. Eves Decl., ¶ 13, Exhibit 3.) Thus, Defendants had the opportunity to present the evidentiary basis for the issuance of a bond, and its failure to do so sustains Volkswagen's request for the bond amount to be set at zero.

Dated: March 13, 2009

SHEPPARD MULLIN RICHTER & HAMPTON LLP

*/s/ Neil A. Smith*
NEIL A. SMITH, Cal. Bar No. 63777
NATHANIEL BRUNO, Cal. Bar No. 228118

Of Counsel (Admitted Pro Hac Vice):
HOWARD, PHILLIPS & ANDERSEN
Gregory D. Phillips Utah Bar No. 4645
Thomas R. Lee Utah Bar No. 5991
Scott R. Ryther Utah Bar No. 5540

(Attorneys for Plaintiffs)

---

[1] Volkswagen acknowledges that the substance of settlement discussions ordinarily is not admissible, but presents this evidence because it is directly responsive to the question raised by the Court.