**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLKSWAGEN AG, et al., | |
| Plaintiffs, | No. C 09-00231 JSW |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| VERDIER MICROBUS AND CAMPER, INC., et al., | |
| Defendants. | |

**INTRODUCTION**

Now before the Court for consideration is the Motion for a Preliminary Injunction filed by Plaintiffs Volkswagen AG and Volkswagen Group of America (collectively "VW"). Defendants Alexandre Verdier and Verdier Microbus and Camper, Inc. had notice of these proceedings (*see generally* Docket Nos. 22-24), but they did not oppose the motion, did not appear at the hearing on this matter, and did not submit a response to the supplemental briefing ordered by the Court. Having considered VW's papers, including the supplemental briefs ordered by the Court, the lack of opposition thereto, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS VW's motion.

**BACKGROUND**

Volkswagen AG and Volkswagen Group of America, Inc. (collectively "VW") are automobile manufacturers.[1] VW owns a number of trademark and service mark registrations for

---

[1] According to the Verified Complaint, "Volkswagen Group of America, Inc. ... is the exclusive U.S. licensee for Volkswagen AG with exclusive authority to import Volkswagen vehicles, parts, accessories, and related products into the U.S. and with

1  the following marks: (1) the VW EMBLEM mark, which consists of an encircled "V" and "W";
2  the MICROBUS mark, which consists of a stylized design of a bus atop the word Microbus; and
3  and the word mark "VOLKSWAGEN MICROBUS." (*See* Compl. ¶¶ 12-18, Exs. A-B.)

4        VW also alleges "ownership rights in the distinctive shape and overall appearance of the
5  VW Microbus automobile," which is the subject of a pending application for registration. (*Id.* ¶
6  20, Ex. C.) VW contends the elements of its trade dress include, but are not limited to, "the
7  'bread loaf' shape of the Microbus, the 'V design' on the nose, the placement of the VW Logo®
8  in the 'V design,' the high 'belt-line' of the windshield and the passenger windows, the shallow
9  and flat room line and profile, the forward placement of the front wheels under the front
10 passengers, the rear placement of the rear wheels towards the rear of the vehicle, the distinctive
11 shape of the passenger doors, the distinctive shape of the 'outwardly hinged barn' passenger
12 doors, the placement and style of the door handles, the distinctive round headlights, [and] the
13 domed and chromed hubcaps or wheel covers[.]" (Docket No. 47 (Supplemental Brief re
14 Preliminary Injunction Motion in Response to Order of Court Dated March 2, 2009).)

15       According to the Verified Complaint, "VW has expended many millions of dollars in
16 advertising, promoting, enforcing, and developing the VW Marks throughout the world. VW
17 prominently displays the VW Marks in its advertising in a wide variety of media, including on
18 the Internet, on television, and in newspapers, and magazines." (*Id.* ¶ 22.) VW also "permits its
19 dealers and licensees to use the VW Marks in their business names, on their business premises,
20 and in their advertising - subject to standards and specifications established by VW." (*Id.*) VW
21 also "advertises on line and operates a number of websites that incorporate the VW Marks."
22 (*Id.* ¶ 24.)

23       Defendants, Alexandre Verdier and Verdier Microbus and Camper, Inc.[2] (collectively
24 "Verdier") allegedly have designed automobiles, which VW alleges are "consciously designed
25 ... to appear as if they were manufactured by, sponsored by, or affiliated with VW." (*Id.* ¶ 28.)

---

responsibility for enforcing the trademarks of Volkswagen AG in the U.S." (Compl. ¶ 4.)

[2] The record suggests that "Verdier Microbus and Camper, Inc.," may not have been incorporated. (Declaration of Gregory D. Phillips Regarding Service of Process of Motion for Preliminary Injunction ("Phillips Decl."), Ex. 5).)

2

1  VW submits depictions of Verdier's allegedly infringing automobiles, which VW contends
2  incorporates VW's trade dress rights in the VW Microbus, as well as a confusingly similar logo.
3  (*Id.* ¶¶ 30, 33.)

4  VW alleges that Verdier is marketing the allegedly infringing vehicles in this district via
5  an interactive website.  VW further alleges that the metatags for this website used the VW
6  Marks.  (Compl.¶ 29.)  The record suggests that Verdier recently was nominated for an award
7  for the design of the Verdier vehicle.  It does not appear that Verdier has sold any of its
8  vehicles.[3]  (*Id.* ¶¶ 8, 32; Declaration of Jason Eves in Support of Motion for Preliminary
9  Injunction ("Eves Decl."), ¶ 3, Ex. 1; Phillips Decl., Ex. 5 (noting that Verdier refunded "only
10 deposit he received"); Docket No. 48 (Declaration of Jason Eves in Support of VW's
11 Supplemental Brief ("Eves Supp. Decl. 2"), ¶¶ 12-13, Ex. 3); Docket 35 (Supplemental
12 Declaration of Jason Eves of New Evidence ("Eves Supp. Decl. 1"), ¶¶ 3-4, Exs. 1-2).)  Finally,
13 VW submits several articles in which the authors characterize Verdier's automobile as an
14 automobile manufactured by VW.  (Compl., Ex. D; Eves Decl., Ex. 3.)

15 On or about November 21, 2008, VW sent a cease and desist letter to Verdier.  The
16 parties engaged in further correspondence in an effort to resolve the matter short of litigation.
17 On January 16, 2009, VW filed its Verified Complaint, alleging trademark infringement,
18 trademark dilution, and unfair competition and, on January 23, 2009, filed its motion for a
19 preliminary injunction.

20 The Court shall address additional facts, as necessary, in the remainder of this Order.

21                                          **ANALYSIS**
22 **A.     Legal Standards Applicable to a Motion for Preliminary Injunction.**

23 VW moves for a court order enjoining Verdier from willfully infringing VW's
24 trademarks and trade dress. Until recently, within the Ninth Circuit, a plaintiff was entitled to a
25 preliminary injunction when it could demonstrate either: (1) a combination of probable success
26 on the merits and the possibility of irreparable injury, or (2) the existence of serious questions

27

28      [3]     It appears that, after this litigation was filed, Verdier disabled its website.
   (*See, e.g.,* Phillips Decl., Ex. 5).)

3

going to the merits, where the balance of hardships tips sharply in plaintiff's favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000). In addition, in trademark cases, a plaintiff was entitled to a presumption of "irreparable injury ... from a showing of likelihood of success on the merits." *GoTo.com*, 202 F.3d at 1205 n. 4. However, the governing law has changed. Now, a plaintiff is not granted the presumption of irreparable harm upon a showing of likelihood of success on the merits. Instead, a plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008) (citations omitted).

In *Winter*, the Supreme Court found that the Ninth Circuit's standard of the likelihood of irreparable injury was too lenient and held that a plaintiff must demonstrate that irreparable injury is "*likely* in the absence of an injunction." *Id.* at 375 (emphasis in original). "Issuing a preliminary injunction based only a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)). Because a preliminary injunction is an extraordinary remedy, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' *Id.* at 376 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376-77 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

**B.     VW Has Established A Likelihood of Success on the Merits on its Trademark Infringement Claim.**

To establish trademark infringement, VW must establish that Verdier is "using a mark confusingly similar to a valid, protectable trademark of [VW's]." *Brookfield Communications,*

4

*Inc. v. West Coast Entertainment*, 174 F.3d 1036, 1046 (9th Cir. 1999).[4] VW submits registration certificates for the VW EMBLEM, the design mark for Microbus, and the VOLKWAGEN MICROBUS word mark. (Compl., Exs. A-B.) These registrations constitute *prima facie* evidence that VW owns a valid and protectable mark and stand unchallenged. *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007); *Brookfield*, 174 F.3d at 1047. In order to determine whether there is a likelihood of confusion between VW's marks and the allegedly infringing mark, the Court applies the eight factor *Sleekcraft* test. *Brookfield*, 174 F.3d at 1054. This test "is a pliant one, in which some factors are much more important than others." *Id.* The Court finds that, on balance, application of the *Sleekcraft* factors demonstrates that VW has established that Verdier is using a confusingly similar mark.

The Court first looks to the similarity of the marks. "The greater the similarity of the marks, the greater the likelihood of confusion." *Moroccanoil, Inc. v. Moraccan Gold, LLC*, 590 F. Supp. 2d 1271, 1277 (C.D. Cal. 2008) (citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). As depicted in the Complaint, the Verdier logo and the VW EMBLEM are nearly identical in sight, although the word "Verdier" is set over the allegedly infringing circular logo. (Compl., ¶¶ 1, 30.) Similarly, "Verdier Microbus and Camper" is similar, albeit not identical, in sound to "Volkswagen Microbus." This factor therefore weighs in favor of finding a likelihood of confusion.

"Related goods are those which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *AMF Inc. v. Sleekcraft Boats*, 599

---

[4] In its Order requesting supplemental briefing, the Court asked VW to brief the issue of laches, because some of the evidence it submits to demonstrate actual confusion dates to 2006. VW attests that a VW Group of America employee brought the Verdier website to its attention on November 21, 2008 and further attests that it did not know of Mr. Verdier's company and had no business relationship with the company. VW makes no assertions about Mr. Verdier as an individual. (Docket No. 49 (Declaration of Dana Cizmadia ¶¶ 3-8.) VW's claim, however, was filed within the requisite statute of limitations period, giving rise to a presumption that laches does not apply. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 (9th Cir. 2006). Finally, Defendants have failed to oppose the motion and, thus, have not established they suffered prejudice as a result of any delay that may have occurred. *See, e.g., Internet Specialties West, Inc. v. Milon-Digiorgio Enters*, __ F.3d __, 2009 WL 690302 at *4-*6 (9th Cir. Mar. 17, 2009) (finding plaintiff's claim was not barred by laches where, even though case was not filed within requisite statute of limitations period, defendant had not established prejudice).

F.2d 341, 348 n.10 (9th Cir. 1979) (internal quotations omitted).  In this case, Verdier is marketing automobiles, and VW is a leading automobile manufacturer.  The relatedness of the goods is evident, and this factor weighs in favor of finding a likelihood of confusion.

"'Convergent marketing channels increase the likelihood of confusion.'" *Official Airline Guides, Inc., v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) (quoting *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)).  VW asserts that it markets its products via the Internet, and the evidence submitted in support of its motion demonstrates that Verdier marketed the allegedly infringing product via the Internet.  (Eves Decl., Ex. 1.)  Accordingly, the Court finds that this factor weighs in favor of a finding of likelihood of confusion.

"The strength of a mark is determined by its placement on a continuum of marks from generic, afforded no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful awarded maximum protection." *E.&J. Gallo Winery v. Gallo Cattle*, 967 F.2d 1280, 1291 (9th Cir. 1992) (quoting *Nutri/System*, 809 F.2d at 605) (internal quotation marks omitted).  Without prejudging where on the continuum the VW Marks fall, the Court finds that VW has established that its marks are strong and, therefore, deserving of protection.  (*See, e.g.,* Compl. ¶¶ 21-22; Eves Supp. Decl. 2, Ex. 1(referring to VW's "microbus").)  *See also Au-Tomotive Gold, Inc., v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006) (noting that the VW marks, which "have been in use for more than fifty years, are strong, distinctive marks").

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides*, 6 F.3d at 1394.  The VW EMBLEM, the Microbus design mark, and the Volkswagen Microbus word mark, are registered on the principal register, which "is constructive notice of the registrant's claim of ownership of the mark." *Moraccanoil*, 590 F. Supp. 2d at 1280 (citing 15 U.S.C. § 1072).  The Court finds that VW is likely to succeed in establishing that Verdier knowingly adopted similar marks.  The Verdier logo and the company name incorporate elements of the VW Marks.  Indeed the

Verdier logo is an almost identical copy of the VW EMBLEM mark. As such, the Court finds that this factor weighs in favor of finding a likelihood of confusion.

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Productions,* 406 F.3d 625, 633 (9th Cir. 2005). VW has submitted several Internet articles and blogs, which suggest that consumers believe the Verdier vehicle is a VW product. For example, one posting states that "[i]f you are looking for eco-friendly vehicles around, check out this one by Volkswagen. We all love the outdoors and roughing it. So if you want to add a piece of green to your extra curricular activities, check out this creation by Canadian Alexandre Verdier." (Compl., Ex. D; *see also* Eves Decl., Ex. 3.) This factor, therefore, weighs in favor of a finding of actual confusion.

The Court finds that the likelihood of expansion of product lines to be neutral, in light of the fact that the parties' goods compete. *See, e.g., Cohn v. Petsmart*, 281 F.3d 837, 843 (9th Cir. 2002); *Brookfield*, 174 F.3d at 1060. Finally, the Court concludes that the degree of care likely to be exercised by purchasers weighs against a finding of likelihood of confusion, given the expense of the items involved. *See Sleekcraft*, 599 F.2d at 353; *Moroccanoil*, 590 F. Supp. 2d at 1280. However, on balance the majority of the *Sleekcraft* factors weigh in favor of VW. Accordingly, the Court concludes that VW has demonstrated that it is likely to succeed on the merits of its infringement claim.

**C.   VW Has Established a Likelihood of Success on the Merits of its Trade Dress Infringement Claim.**

VW also claims trade dress rights in the "distinctive shape and overall appearance of the VW Microbus automobile." (Compl. ¶ 20.) In order to establish its trade dress infringement claim, VW must prove: "(1) that its claimed dress is non-functional; (2) serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendants' product creates a likelihood of confusion." *Clicks Billiards, Inc. v. Six Shooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001); *see also Scentsy, Inc. v. Performance Mfg., Inc.*, 2009 WL 320334 at *8 (D. Id. Feb. 9, 2009). Because VW had not adequately addressed the first two elements in its opening brief, the Court ordered supplemental briefing on

7

this issue. Having considered VW's supplemental brief and the evidence submitted therewith, the Court concludes it has demonstrated that it is likely to succeed on the merits of its trade-dress infringement claim.

"A product feature is functional if it is essential to the use or purpose of the item or effects its cost of quality." *General Motors Corp. v. Let's Make a Deal*, 223 F. Supp. 1183, 1196 (D. Nev. 2002). "In contrast, non-functional features are those that are arbitrarily affixed or included for aesthetic purposes. In addition, the existence of alternative designs supports a finding of non-functionality." *Id.* (citing *Clicks Billiards*, 251 F.3d at 1260). The Court examines the trade dress as a whole. "Thus, features, when considered separately as functional, may still create a non-functional trade dress when considered together." *Id.*; *see also Clicks Billiards*, 251 F.3d at 1259 ("[t]rade dress is the composite tapestry of visual effects").

In the *General Motors* case, the plaintiff contended that the defendants produced car kits that captured all of the unique characteristics of its Hummer vehicle. The court concluded that although the plaintiff incorporated design elements that served some functional purposes, the "overall finished product ha[d] attained non-functional status." 223 F. Supp. 2d at 1196. The court further concluded that the plaintiff "in selecting and incorporating various components into its vehicle has created a sports utility vehicle that is aesthetically different from all other vehicles on the market ... [and] create a unique looking vehicle." *Id.* The court's conclusion was further bolstered by the "the current size of the sports utility vehicle market." *Id.* Accordingly, it found that the plaintiff had established a likelihood of success on the merits, and granted its motion for a preliminary injunction against the defendant.

The Court finds the *General Motors* case to be on point. Considering each of the elements VW identifies as its trade dress, including but not limited to the "bread loaf" design, the "V design" on the nose of the vehicle and the placement of the VW Logo within the V, the placement of the wheels and windows, and the round headlights, the Court concludes that VW has made a sufficient showing that "the sum of the elements of the [VW Microbus] trade dress are non-functional." *General Motors*, 223 F. Supp. 2d at 1196. Further, through the

1  incorporation of these elements the VW Microbus is "aesthetically different from all other
2  vehicles on the market." *Id.*

3  "Trade dress is protected if it is inherently distinctive or has acquired secondary
4  meaning." *General Motors*, 223 F. Supp. at 1195. "However, if trade dress is claimed in a
5  product design, it will only be protected upon a showing of secondary meaning because product
6  design can never be inherently distinctive." *Id.* (citing *Wal-Mart Stores, Inc. v. Samara Bros.,
7  Inc.*, 529 U.S. 205, 216 (2000).) "Proof that a party has copied another's trade dress 'strongly
8  supports an inference of secondary meaning.'" *Id.* (quoting *Vision Sports, Inc. v. Melville
9  Corp.*, 888 F.2d 609, 615 (9th Cir. 1989)).[5] As demonstrated by the illustrations in the
10 Complaint, the Verdier vehicle is an almost identical copy of VW's Microbus, which supports
11 an inference of secondary meaning. Further, a plaintiff can establish secondary meaning by
12 way of advertising and marketing efforts. *General Motors*, 223 F. Supp. 2d at 1195 (finding
13 that plaintiff had established its trade dress had acquired secondary meaning based, in part, on
14 use of trade dress in advertisements and marketing materials).

15 As set forth in VW's supplemental briefing, it has used the Microbus trade dress in its
16 advertising efforts and alleges that it has "expended many millions of dollars in advertising,
17 promoting, enforcing and developing the VW marks throughout the world." Further the
18 USPTO has issued an Office Action in connection with VW's application for the registration of
19 its trade dress, in which the Examiner concluded that VW had "successfully claimed the [trade
20 dress] has acquired distinctiveness." (Compl., ¶¶ 21-22; Suppl. Eves. Decl. 2, ¶¶ 10, Exs. 1-2.)
21 The Court concludes that VW has presented sufficient evidence to establish a likelihood of
22 success on the merits that the trade dress in its Microbus has acquired secondary meaning.
23 Further, as set forth above, there is evidence of actual confusion in the record. Thus, the Court
24 concludes that VW has established a likelihood of success on the merits on its trade dress
25 infringement claim.

---

[5] Unlike the VW EMBLEM, Microbus, and VOLKSWAGEN MICROBUS marks, VW does not have a registration for its claimed trade dress.

9

**D.     Irreparable Harm.**

The standard under *Winter* requires that VW demonstrate, by the introduction of admissible evidence and with a clear likelihood of success that the harm is real, imminent and significant, not just speculative or potential.  129 S. Ct. at 374.  Prior to *Winter*, this Court would have applied a presumption of irreparable harm upon concluding that VW had established a likelihood of success on the merits of its infringement claims.  "[T]he reason for the trademark presumption of irreparable injury is that once a probability of proving likelihood of confusion at trial is shown, the trademark owner's business goodwill and reputation are at risk."  4 McCarthy on Trademarks § 30:47; *see also Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 526 (9th Cir. 1984) (finding irreparable injury where "district court could reasonably have concluded that continuing infringement would result in loss of control over Apple's reputation and loss of good will").

VW has submitted evidence of actual confusion, which reference the relatively high cost of the Verdier vehicle, and also submitted evidence that the Verdier vehicle has been nominated for an award.  (*See, e.g.,* Eves Decl., Ex. 3.)  Even if the Court does not apply a presumption of irreparable harm, it concludes that VW has demonstrated that Verdier's activities are likely to cause a loss of control over VW's reputation and good will.  *Apple Computer*, 725 F.2d at 526.  Accordingly, the Court concludes that VW has demonstrated a likelihood of irreparable harm.

**E.     Balance of Equities and the Public Interest.**

For the reasons set forth above, the Court concludes that the balance of hardships does not weigh against granting an injunction.  Moreover, neither of the defendants appeared and, thus, have not submitted evidence that they would suffer any harm from the issuance of an injunction.  Finally, in trademark cases, the public interest factor "is often addressed in terms of the public's right 'not to be deceived or confused.'"  *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2009) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 198 (3rd Cir. 1990).  In light of the Court's findings on likelihood of confusion, the Court concludes that the public interest also weighs in favor of granting an injunction.

**F.     Bond**.

The Court ordered VW to address the issue of a bond in its supplemental brief and has considered those papers and the authorities cited therein. In light of Verdier's failure to appear and oppose the motion, and there being no evidence that Verdier will suffer any damages as a result of the issuance of the injunction, the Court declines to impose a bond.

### CONCLUSION

For the foregoing reasons, VW's motion is granted, and the injunction shall issue by separate order. Plaintiffs shall serve a copy of this Order and the Preliminary Injunction on Defendants.

**IT IS SO ORDERED.**

Dated: April 3, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11